| 45 | 465 |
| 52 | 317 |
| 45 | 465 |
| 59 | 529 |

STATE, EX REL. JOSEPH GALLAGER ET AL., PROSECUTORS,
v. BOARD OF PUBLIC WORKS AND BOARD OF FINANCE
AND TAXATION OF JERSEY CITY

1. A return to an alternative writ of *mandamus* commanding the respondents to extend a brick sewer in a direct line with Fourth street, across the filling in of Harsimus cove to the Hudson river, or show cause, will not be quashed, where it shows substantial difficulties in the construction of such sewer, adequate relief provided by another sewer, and the want of funds, or authority to raise them.

2. If a return to an alternative *mandamus* be manifestly false, frivolous, or calculated to embarrass or delay the remedy sought, it will be quashed in a summary way, on motion, and a peremptory writ awarded.

On motion to quash the return to a writ of alternative *mandamus*, commanding the board of public works to remove all obstructions from the main sewer on Fourth street, Jersey City, which prevent the contents of said sewer from flowing out of the same into the Hudson river, and to open the sewer through the new-made land east of Henderson street to the Hudson river, and to continue the Fourth street sewer along the line of Fourth street, extended, to the Hudson river, according to the plan of sewerage adopted and in force in Jersey City, and that the board of finance and taxation concur in and provide the money necessary to pay for doing the work, or show cause, &c. The contents of the return sufficiently appear in the opinion of the court.

.Argued at June Term, 1883, before Justices SCUDDER, REED, and MAGIE.

For the relators, *S. B. Ransom.*

For the respondents, *A. L. McDermott.*

The opinion of the court was delivered by

SCUDDER, J. The question raised by this motion to quash the return to an alternative writ of *mandamus* allowed in this court is not whether the relators have a grievance which should be examined, and relieved if it be found. This was decided on the petition and affidavits presented when the writ was ordered. But we are now asked to determine whether the return made is good pleading, and shows obedience to the mandate of the writ, or assigns good cause why it has not been obeyed. As a question of pleading, merely, the rule that has been usually enforced is that a return is sufficient if it contains a full and certain answer to all the allegations expressly made in the writ, and discloses a fair legal reason why the *mandamus* should not be obeyed. *Springfield* v. *County Commissioners*, 10 *Pick.* 59. It is also an established rule that while there will be no presumption of law or fact

against a return unless it fails to answer the material allega-
tions in the alternative writ, the court will always scrutinize
closely the response which is made to its command that the
respondents shall do justice to the petitioner in the matter of
their petition, to guard against any evasion, delay, or frus-
tration of its purpose. The respondents must do what the
writ commands, or show on the face of the return an honest,
legal excuse for their disobedience. Under our practice, and
the statute for the better regulation of proceedings upon writs
of *mandamus*, they may set up in their return as many separ-
ate defences as they see fit, provided they be consistent, fairly
responsive, and tend to an issue which will procure a final
decision of the substantial rights of the parties. But if the
return be in such form that the court can see that it is false,
frivolous, or calculated to embarrass or delay the remedy
sought, a case is made for a motion to quash in a summary
way, and award a peremptory writ. It is only in such case that
the extraordinary power of the court will be used to set aside
the return and compel obedience. Slower and more formal
methods of procedure must be used where the return offers
solid defences and shows real difficulties in obeying the man-
date of the writ. Where these appear the respondents are
entitled to have the material facts in their return pleaded to,
and traversed, or tried by demurrer. It was said by this
court in *Silverthorne* v. *Warren Railroad Co.*, 4 *Vroom* 173,
that it has the abstract power to quash the return on motion
to prevent indecorum or vexation, as in case of a tricky or
fraudulent return; but in the English practice, which was
approved in that case, this authority is not exercised except
in the class of cases referred to, or where the returns are friv-
olous or contemptuous or manifestly bad on their face. In
other cases, the court say the prosecutor must traverse or de-
mur, that the respondent may have his review by writ of
error, if he desire it. The grievance of which the prosecutors
complain, which is set out at length in the alternative writ, is,
in substance, that the mouth of the Fourth street sewer has
been stopped by filling in Harsimus cove, and the result has

been that in the heavy rains of September, 1882, the sewer filled up and flowed back in their houses, causing offensive and unwholesome smells and sickness; that the lateral wooden box sewers have become sunken and will not discharge the water and contents of the brick sewer on Fourth street. The remedy which the relators claim is the continuation of the Fourth street brick sewer in a direct line with said street across the filling in Harsimus cove to the Hudson river. To this the respondents return answer that the stopping of the sewer's mouth at or near Henderson street was done by the filling in of Harsimus cove by legislative authority, without any act or acquiescence on their part; that the building and maintenance of a brick or other sewer across the unsettled filling is impracticable, and the attempt to do it very expensive; that they have not the funds to build it, and have no authority by their charter to raise them; that the charter and ordinances referred to do not require the continuation of the sewer in a direct line to the Hudson river; that another substantial brick sewer is being constructed by the Pennsylvania Railroad Company, by agreement with the city, running from the mouth of Fourth street sewer to the Second street sewer, which will discharge the drainage of Fourth street into the Hudson river, and remedy the injury complained of; that the work is nearly completed, and the cause of complaint already substantially removed.

It is evident from this condensed statement of the questions raised by the return that the objections to running the sewer in a direct line to Hudson river are substantial, and that the boards of Jersey City, without funds in hand or the clearly apparent means to obtain such funds, should not be coerced to build a sewer through a filling of such kind that it may settle, and break any sewer that may be built there, when adequate relief can be, and is, nearly accomplished by another method of sewerage which has been approved by the board and the chief engineer of the city, and will be done without expense to the relators or to the city. Without, therefore, deciding the merits and truthfulness of the return, which it is not neces-

sary to do on this motion to quash, in which both must be assumed, as therein stated, it is enough to say that we do not find it to be frivolous or manifestly bad on its face, or in contempt of the command in the alternative writ, and that, therefore, the relators should plead or demur to this return, as they may be advised, so that the respondents may have their proper standing in court for a further review of this controversy, if they should desire it. The motion to quash will be refused, with leave to the relators to plead over, on payment of costs.